

FILED
CLERK, U.S. DISTRICT COURT

JUL 18 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

1  SEYFARTH SHAW LLP
   KENNETH L. WILTON (SBN: 126557)
2  E-mail: kwilton@seyfarth.com
   2029 Century Park East, Suite 3500
3  Los Angeles, California 90067-3021
   Telephone: (310) 277-7200
4  Facsimile: (310) 201-5219

5  BART A. LAZAR (*pro hac vice* to be filed)
   E-mail: blazar@seyfarth.com
6  233 S. Wacker Dr. Suite 8000
   Chicago, IL 60606
7  Telephone: (312) 460-5986
   Facsimile: (312) 460-7986

8
   Attorneys for Plaintiff
9  PHISH, INC.

LA-CV18 06185 - SVW-SKx

10            UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12                WESTERN DIVISION

13  PHISH, INC., a Delaware corporation,    | Case No.
14           Plaintiff,                      |
15                                           | **COMPLAINT FOR FEDERAL**
         v.                                  | **TRADEMARK INFRINGEMENT;**
16                                           | **FEDERAL UNFAIR**
                                             | **COMPETITION AND FALSE**
17  VARIOUS JOHN DOES, JANE DOES,            | **DESIGNATION OF ORIGIN;**
    AND XYZ CORPORATIONS,                    | **FEDERAL TRADEMARK**
18                                           | **DILUTION;**
           Defendants.                       | **MISAPPROPRIATION OF**
19                                           | **RIGHTS OF PUBLICITY**

20

21

22            **APPLICATION TO FILE UNDER SEAL**

23       **PURSUANT TO 15 U.S.C. § 1116(d)(8) FILED CONCURRENTLY**

24

25

26

27

28

                                              COMPLAINT
   47679736v.1

ORIGINAL

LODGED
CLERK U.S. DISTRICT COURT
JUL 17 2018
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# COMPLAINT

Plaintiff, Phish, Inc. ("Plaintiff"), as and for its complaint, hereby alleges as follows:

## JURISDICTION AND VENUE

1.    The claims set forth herein arise under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, as well as the statutory law of this state. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as the  federal trademark claims herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state law claims in this civil action.

2.    This Court has personal jurisdiction over the Defendants, who, upon information and belief, are or will be found conducting business in this District, and are or will be performing the acts of infringement set forth in this Complaint in this District.

3.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claims herein have occurred, and will occur, in this District.

## PARTIES

4.    Phish, Inc. is a Delaware corporation with its principal offices located at 431 Pine Street, Suite 1, Burlington, Vermont 05401.

5.    Defendants Various John Does, Jane Does and XYZ Corporations are unknown and unidentified individuals who are expected to sell Counterfeit/Bootleg Merchandise at Phish concerts during the 2018 Tour.

6.    The identities and residences of additional Defendants are unknown at this time, and the Complaint will be amended to include the names and addresses of those defendants who permit themselves to be identified.

1

47679736v.1

# FACTS

7.    Plaintiff is the owner of various intellectual property rights of the world famous musical group known as Phish ("Phish").

8.    Phish first formed in late 1983 at the University of Vermont, and after performing concerts throughout the early 1980s, released their first cassette album in 1988. During the 1990s, Phish gained substantial fame as an eclectic rock & roll band.

9.    Throughout the 1990s, Phish toured the world and recorded albums. From 1992 to 1999, seven of its albums made it to the Billboard 200 Charts, a music trade industry publication. In 1994, one of its songs, "Down with Disease," became the band's first video and received airplay on the nationwide cable television channel MTV.

10.    Phish's popularity grew during the latter half of the 1990s, as their ceaseless touring had helped make them one of the top concert draws in the nation. During a temporary hiatus from touring together in 2000-2002, each of Phish's band members released albums and made appearances in various venues, and the band made an appearance on the television show, "The Simpsons" before releasing a massive set of live albums (as well as a DVD) during 2002 and 2003.

11.    Between 2002 and 2004, Phish again toured across the country and released albums. Concerts throughout this time drew crowds in the thousands at each performance. Between 2000 and 2004, numerous records of Phish concerts made the Billboard 200 Chart.

12.    Phish ended its 2003 summer tour with a two-day festival in Limestone, Maine. As with prior Phish festivals, the band performed three sets each day, with on-site camping as well as numerous attractions and art installations created by teams of talented artists and performers. This popular festival had a turnout of approximately 70,000 fans. To cap off the 2004 tour, Phish performed a two-day festival in the rural town of Coventry, Vermont, the band's first ever home

2

47679736v.1

state festival and the first public outdoor Vermont appearance since 1995. This final performance had a turnout of approximately 50,000 fans.

13.    Between 2004 and 2009, many albums were released under the band's famous name, PHISH. Since the 1980s, Phish has sold close to eight million (8,000,000) albums and has released at least forty (40) live CD sets and seven (7) live DVD sets. In addition, Phish has released audio downloads of every concert between 2002 and 2017 as well as live video webcasts of more than one hundred and forty-five (145) concerts during those same years. Several albums, including live performances at Madison Square Garden and in Las Vegas, Nevada made the Top Internet Album charts during that time.

14.    Beginning in May of 2009, Phish embarked on another enormously successful series of annual nationwide concert tours. During the 2009 tour, Phish played 50 concerts in 27 venues, all of which were sold out. In 2010, Phish again conducted a nationwide tour, playing almost 50 concerts at 29 venues, all of which were sold out. Each year since — from 2011 through 2017 - Phish has toured the country playing dozens of sold-out concerts for its legion of fans.

15.    The individual members of Phish currently include TREY ANASTASIO, MIKE GORDON, JON FISHMAN, and PAGE MCCONNELL (the "Artists"), who have each achieved great renown and reputation throughout the world as members of Phish.

16.    Plaintiff owns federal registrations for its trademarks in the name PHISH, including PHISH FOOD, U.S. Registration Number 2173816 for clothing, namely, T-shirts, shirts, hats and jackets in International Class ("IC") 25 and ice cream, frozen yogurt and sorbet in IC 30; PHISH, U.S. Reg. No. 2096010 for providing a data base of information on a global computer network in the fields of music and entertainment in IC 41; PHISH, U.S. Reg. No. 2029049 for musical audio and video recordings in IC 9; PHISH, U.S. Reg. No. 2029048 for posters, decals, calendars, sheet music, newsletters and books in the fields of music and

3

47679736v.1

1   entertainment in IC 16; PHISH, U.S. Reg. No. 1917861 for bumper stickers in IC

2   16 and hats, T-Shirts, shirts and jackets in IC 25; PHISH, U.S. Reg. No. 1782981

3   for entertainment in the nature of musical group in IC 41; and PHISH and design,

4   U.S. Reg. No. 1930480 for bumper stickers in IC 16; hats, T-shirts, shirts, and

5   jackets in IC 25; and cloth patches for clothing in IC 26 (collectively, the "PHISH

6   Marks"). Copies of federal registration certificates for the Phish Marks are

7   attached hereto as Exhibit A.

8        17.    Phish Artist Trey Anastasio, along with members of another band,

9   also owns a federal registration for the trademark OYSTERHEAD, U.S. Reg. No.

10  2662635 for prerecorded musical recordings in IC 9 and jackets, hats, shirts and T-

11  shirts in IC 25. Plaintiff is licensed to sell merchandise containing the

12  OYSTERHEAD mark. A copy of the federal registration certificate for the

13  OYSTERHEAD mark is attached as Exhibit B.

14       18.    Anastasio also owns federal registrations for the trademark

15  GAMEHENDGE, U.S. Reg. No. 2048310 for clothing, namely, hats, T-shirts,

16  shirts in IC 25; and GAMEHENDGE, U.S. Reg. No. 2053513 for bumper stickers

17  and decals in the fields of music and entertainment in IC 16. Copies of the federal

18  registration certificates for the GAMEHENDGE marks are attached as Exhibit C.

19  Anastasio and Plaintiff have used the mark GAMEHENDGE since at least as early

20  as 1988. Plaintiff is also licensed to manufacture and sell merchandise containing

21  the GAMEHENDGE marks.

22       19.    Plaintiff is also the owner of a charitable fund-raising entity known as

23  the Waterwheel Foundation, Inc., through which it owns a federal registration for

24  the trademark WATERWHEEL, U.S. Reg. No. 2247438 for charitable fund raising

25  and distribution of funds to charities in IC 36. A copy of the federal registration

26  certificate for the WATERWHEEL mark is attached as Exhibit D. Plaintiff has

27  used the WATERWHEEL mark in commerce since at least as early as 1997 in

28  connection with the band's charitable works.

                              4

20.     Phish Artist McConnell owns an entity known as A. Dante, LLC, through which he owns the trademark VIDA BLUE for entertainment in the nature of live musical performances by a musical group. Plaintiff is also licensed to manufacture and sell merchandise containing the VIDA BLUE mark, and both McConnell and Plaintiff have used the mark in commerce since at least as early as 2001.

21.     Plaintiff has used a majority of the PHISH Marks since at least as early as 1983, and has also used the trademarks OYSTERHEAD, GAMEHENDGE, WATERWHEEL and VIDA BLUE, as well as the service marks, trade names, logos and likenesses of the Artists (collectively, the "Plaintiff's Marks") substantially and continuously in interstate commerce, including through publishing and distributing of albums, recordings and other merchandise; through publicity and marketing over the internet and other media; and through printing and distribution of tickets to its concerts. Plaintiff has the right to sell any and all genuine merchandise bearing the Plaintiff's Marks ("Merchandise").

22.     Plaintiff, through its agreements with the Artists, Waterwheel Foundation and A. Dante LLC, has the right to enforce the Plaintiff's Marks.

23.     Due to Phish's enormous success and popularity, Plaintiff has regularly received financially lucrative offers to license Plaintiff's Marks for use on a variety of products, such as from the manufacturers of PHISH FOOD ice cream, Ben & Jerry's. However, Plaintiff is careful to limit such merchandising activities only to products of the highest quality and pursuant to arrangements by which it maintains complete control over the manner in which its name and likenesses are presented, in line with the high regard in which the Phish name is held in the popular music industry. Pursuant to its licensing arrangements, goods bearing the Plaintiff's Marks have been distributed widely throughout the United

5

47679736v.1

1   States; for example, over a million genuine T-shirts bearing Plaintiff's Marks have

2   been sold or otherwise distributed since 1994.

3       24.    As a result of such sales and distribution, as well as Phish's

4   enormously popular concert tours and recordings, the Plaintiff's Marks have

5   developed and now possess a secondary and distinctive meaning to purchasers of

6   its Merchandise.

7       25.    Phish has scheduled another concert tour for 2018 (the "2018 Tour")

8   including July 27 and 28, 2018 with concerts at The Forum in Los Angeles. The

9   2018 Tour continues with concerts in many other venues across the country.

10      26.    The concerts of the 2018 Tour have been highly publicized and

11  several of them are already sold out or close to selling out.  Phish will perform

12  before hundreds of thousands of people during the 2018 Tour. In addition, Plaintiff

13  will manufacture, distribute and sell, and has or will license third-party vendors to

14  manufacture, distribute and sell, authentic Merchandise at all of its concerts during

15  the 2018 Tour.

16      27.    Since the inception of Phish's popularity in the 1990s, Phish's concert

17  tours have been plagued by individuals who sell unauthorized merchandise near, at

18  and sometimes inside a concert venue. These individuals are commonly referred to

19  as "Bootleggers" and their activities are known as "Bootlegging." The merchandise

20  sold by Bootleggers bearing unauthorized copies of Plaintiff's Marks is referred to

21  as "Bootleg Merchandise" or "Unauthorized Merchandise" (hereinafter "Bootleg

22  Merchandise").

23      28.    Bootleggers are peddlers who, without permission or authorization,

24  misappropriate the names, likenesses, logos, artwork and/or trademarks of

25  performing artists and musical groups for use on merchandise to sell to the general

26  public in order to cash in on such group's commercial value and reputation, all in

27  violation of the rights of those individuals and companies which possess the

28  exclusive right to engage in such commercial activity.

6

47679736v.1

29.     In 1994, Plaintiff's merchandising predecessor, Giant Merchandising ("Giant"), first sought and obtained orders authorizing the seizure of Bootleg Merchandise sold during a Phish tour, resulting in the seizure of thousands of such illegal items. From 1995 through 2014, similar seizure orders have removed tens of thousands of pieces of illegal Bootleg Merchandise from around Phish concert venues.

30.     Defendants herein are Bootleggers who have and will manufacture, sell, offer for sale, hold for sale, advertise and/or distribute unauthorized, imitation and inferior Bootleg Merchandise containing the Plaintiff's Marks within the vicinity of the Forum concert and at all concerts during the 2018 Tour.

31.     Because they are generally nomadic individuals without permanent business premises, it is impossible to identify Bootleggers prior to a concert and the Bootleggers often flee the area of the concert once they have sold their Bootleg Merchandise. Thus, Phish has been unable to determine the identities of Defendants prior to filing this action.

32.     Based upon Plaintiff's experience in selling concert tour merchandise at similar concerts and performances throughout the country, it is virtually certain that before, during and after each Phish concert during the 2018 Tour, Bootleggers will attempt to distribute and sell Bootleg Merchandise.  Plaintiff's experience and belief proved to be correct in that Bootleg Merchandise was found to be sold at several Phish concerts during the 2017 Tour.

33.     This Bootleg Merchandise is of the same general nature and type as Plaintiff's Merchandise, and so related and similar to the genuine Plaintiff's Merchandise that Defendants' use is likely to cause confusion, to cause mistake and to deceive consumers into believing Bootleg Merchandise is associated with, sponsored by or endorsed by Plaintiff.

34.     Defendants' Bootleg Merchandise is inferior in quality, and its sale will be damaging to the reputation which Plaintiff has developed in connection

7

47679736v.1

1   with its sale of authentic Merchandise and to the goodwill Plaintiff has developed

2   in Plaintiff's Marks.

3       35.   These unauthorized sales of Bootleg Merchandise are likely to create

4   confusion and/or misunderstanding by its purchasers regarding its source and

5   sponsorship.

6       36.   Upon information and belief, Defendants have been transacting and

7   continue to transact business, and have been and continue to infringe Plaintiff's

8   rights in the Plaintiff's Marks in this District and elsewhere in interstate commerce,

9   and regularly have been and now do business and solicit business and derive

10   substantial revenue from goods sold, used and consumed in interstate commerce

11   including from Bootleg Merchandise sold in this District.

12   **COUNT ONE**

13   **FEDERAL TRADEMARK INFRINGEMENT**

14   **(15 U.S.C. §1114)**

15       37.   Plaintiff repeats and realleges the foregoing allegations as if fully set

16   forth herein.

17       38.   The PHISH Marks, and the OYSTERHEAD, GAMEHENDGE and

18   WATERWHEEL marks are highly distinctive and arbitrary, of great value

19   throughout the United States, and have become universally associated in the public

20   mind with the products and services of Phish and its Artists.

21       39.   The federal registrations for the PHISH Marks, OYSTERHEAD,

22   GAMEHENDGE and WATERWHEEL are incontestable pursuant to 15 U.S.C. §

23   1065.

24       40.   Defendants have constructive notice of the PHISH Marks,

25   OYSTERHEAD, GAMEHENDGE and WATERWHEEL pursuant to 15 U.S.C. §

26   1072.

27

28

8

47679736v.1

41.     On information and belief, Defendants also have actual notice of Plaintiff's rights in the PHISH Marks, OYSTERHEAD, GAMEHENDGE, and WATERWHEEL.

42.     Without Plaintiff's authorization or consent, Defendants have manufactured, distributed, offered for sale, held for sale, advertised and/or sold the Bootleg Merchandise to the consuming public in commerce, and/or will manufacture, distribute, offer for sale, hold for sale, advertise and sell such merchandise during the 2018 Tour, including at the Forum, in direct competition with Plaintiff's sale of its genuine Merchandise.

43.     Defendants' use of copies or simulations of the PHISH Marks, OYSTERHEAD, GAMEHENDGE and WATERWHEEL, is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Bootleg Merchandise, and is likely to deceive the public into believing that the Bootleg Merchandise being sold by Defendants originates from, is associated with or otherwise is authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

44.     On information and belief, Defendant's conduct has been or will be in malicious, fraudulent, deliberate, willful and intentional disregard of Plaintiffs rights, making this an "exceptional" case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

45.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation. Plaintiff cannot be adequately compensated for these injuries by damages alone, and Plaintiff has no adequate remedy at law for Defendants' infringement of its rights. Plaintiff is entitled to injunctive relief, as well as attorneys' fees and damages, which may be trebled.

47679736v.1

COMPLAINT

## COUNT TWO
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

46.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

47.    Defendants have manufactured, distributed, offered for sale, held for sale, advertised, and sold and/or will manufacture, distribute, offer for sale, hold for sale, advertise and sell Bootleg Merchandise which bears unauthorized copies of Plaintiff's Marks at the Forum Concert and at all concerts to be performed by Phish during the 2018 Tour, without Plaintiff's authorization, and as such, Defendants' use is likely to cause confusion to the general purchasing public.

48.    By misappropriating and using the Plaintiff's Marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Bootleg Merchandise and create a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such merchandise.

49.    Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Bootleg Merchandise creates express and implied representations that the Bootleg Merchandise was created, authorized or approved by Plaintiff, all to Defendants' profit and Plaintiffs great damage and injury.

50.    Defendants acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Marks, in connection with Defendants' goods and services sold in interstate commerce constitutes a false designation of origin and unfair competition.

51.    On information and belief, Defendants' conduct has been or will be in malicious, fraudulent, deliberate, willful and intentional disregard of Plaintiffs

10

47679736v.1

1  rights, making this an "exceptional" case within the meaning of Section 35 of the

2  Lanham Act, 15 U.S.C. § 1117.

3      52.   Plaintiff has no adequate remedy at law, and. if not enjoined,

4  Defendants' activities will cause immediate and irreparable injury to Plaintiff.

5  Plaintiff cannot be adequately compensated for these injuries by damages alone,

6  and Plaintiff has no adequate remedy at law for Defendants' infringement of its

7  rights. Plaintiff is entitled to injunctive relief, as well as attorneys' fees and

8  damages, which may be trebled.

9  **COUNT THREE**

10  **FEDERAL TRADEMARK DILUTION**

11  **(15 U.S.C. § 1125(c))**

12      53.   Plaintiff repeats and realleges the foregoing allegations as if fully set

13  forth herein.

14      54.   The Plaintiff's Marks are "famous marks" within the meaning of §

15  43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1) and have been famous marks

16  prior to Defendants' conduct as alleged herein.

17      55.   Defendants' manufacture, distribution, sale, advertisement, holding

18  and/or offer for sale in commerce of Bootleg Merchandise dilutes the distinctive

19  quality of the Plaintiff's Marks, and was or will be done with the willful intent to

20  trade on Plaintiff's reputation and/or to cause dilution of the Plaintiff's Marks.

21      56.   Defendants' acts constitute knowing and willful violation of

22  Plaintiff's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

23      57.   Plaintiff has no adequate remedy at law and, if Defendants' activities

24  are not enjoined, will continue to suffer irreparable harm and injury to Plaintiff's

25  goodwill and reputation. Plaintiff cannot be adequately compensated for these

26  injuries by damages alone, and Plaintiff has no adequate remedy at law for

27  Defendants' infringement of its rights. Plaintiff is entitled to injunctive relief, as

28  well as attorneys' fees and damages, which may be trebled.

11

47679736v.1

## COUNT FOUR

## MISAPPROPRIATION OF PLAINTIFF'S RIGHT OF PUBLICITY
## (CAL. CIV. CODE § 3344)

58.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

59.     As a result of the investment of substantial money, time and energy in advertising, publicizing and promoting the accomplishments and excellence of Phish and the Artists, Plaintiff has developed and now possesses a separate right of publicity in each of the Artists' likenesses, images, reputations, and celebrity status.

60.     The Artists' likenesses, images, reputations, and celebrity status have commercial value and are marketable in the area of musical concert engagements, product endorsements or sponsorships, and other valuable licensing.

61.     Defendants have used or will use the likenesses, images, reputations, and celebrity status of Phish and/or the Artists for advertising and commercial purposes and for the purposes of trade, including but not limited to use on Bootleg Merchandise, without Plaintiff's permission, or consent.

62.     On information and belief, Defendants' use of the likenesses, images, reputations, and celebrity status of Phish and/or the Artists is knowing, intentional, willful, wanton, and malicious.

63.     Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn substantial revenues and profits on the strength of the likenesses, images, reputations, and celebrity status of Phish and/or the Artists.

64.     Defendants' unauthorized use of the likenesses, images, reputations, and celebrity status of Phish and/or the Artists causes damage to Plaintiff and constitutes a willful infringement of the Plaintiff's right of publicity in and to such names and likenesses, in violation of Cal. Civ. Code § 3344.

47679736v.1

65.  As a result of Defendants' wrongful acts alleged herein, Plaintiff has suffered and is continuing to suffer irreparable injury. Plaintiff cannot be adequately compensated for these injuries by damages alone, and Plaintiff has no adequate remedy at law for Defendant's wrongful conduct. Plaintiff is entitled to injunctive relief.

WHEREFORE, PLAINTIFF PRAYS:

1.  That this Court issue a  preliminary and permanent injunction prohibiting the Defendants, their agents, servants, employees, officers, attorneys, successors and assigns and all persons acting on the Defendants' behalf from:

    a.  manufacturing, distributing, offering for sale, holding for sale, advertising, or selling any clothing, jewelry, photographs, posters, recordings, and other merchandise bearing unauthorized copies of the Plaintiff's Marks, or any colorable imitation thereof ("Bootleg Merchandise");

    b.  representing that any article of Bootleg Merchandise manufactured, distributed, sold, held for sale or advertised by the Defendants is sponsored or authorized by the Plaintiff, Phish or the Artists; and

    c.  otherwise using the Plaintiff's Marks in any manner likely to cause confusion as to the source, origin, sponsorship or affiliation of any products manufactured, distributed, held for sale, offered for sale or sold by Defendants.

2.  That this Court issue an order permitting seizure of the Bootleg Merchandise as set forth in the motion and proposed order submitted herewith.

3.  That Plaintiff be afforded such other relief to which it is entitled pursuing to 15 U. S .C. § 1116;

4.  That Plaintiff recover damages arising out of Defendants' infringement and unfair competition, and that such award be trebled pursuant to 15 U.S.C. § 1117;

13

5.     That Defendants be ordered to conduct a full accounting, including but not limited to an accounting of all revenue and profits derived from Defendants' manufacture, distribution, offer for sale or sale of Bootleg Merchandise and that Plaintiff be awarded Defendants' profits as a consequence of the acts of infringement and that such award be trebled pursuant to 15 U.S.C. § 1117;

6.     That Plaintiff be awarded punitive damages to which it is entitled pursuant to Cal. Civ. Code § 3344.

7.     That Plaintiff be awarded its reasonable attorneys' fees and expenses pursuant to 15 U.S.C. § 1117;

8.     That Defendants be ordered to deliver up for destruction all Bootleg Merchandise and the means of reproducing same following final judgment in this action pursuant to 15 U.S.C. § 1118.

9.     That the Court grant such other relief to which the Plaintiff may be entitled, or as the Court deems to be reasonable, necessary and just.

Respectfully submitted,

SEYFARTH SHAW LLP

Dated: July 16, 2018                    By: _____

Kenneth L. Wilton
Attorneys for Plaintiff
PHISH, INC.

14

COMPLAINT

47679736v.1

# EXHIBIT A

Int. Cls.: 25 and 30

Prior U.S. Cls.: 22, 39, and 46

**United States Patent and Trademark Office**

Reg. No. 2,173,816

Registered July 14, 1998

## TRADEMARK
### PRINCIPAL REGISTER

## PHISH FOOD

PHISH, INC. (DELAWARE CORPORATION)
431 PINE STREET, SUITE 1
BURLINGTON, VT 05401 PHISH, INC. (DELA-
WARE CORPORATION)

431 PINE STREET, SUITE 1
BURLINGTON, VT 05401

FOR: CLOTHING, NAMELY, T-SHIRTS,
SHIRTS, HATS AND JACKETS , IN CLASS 25
(U.S. CLS. 22 AND 39).

FIRST USE 3–18–1997; IN COMMERCE
3–18–1997.
FOR: ICE CREAM, FROZEN YOGURT AND
SORBET, IN CLASS 30 (U.S. CL. 46).
FIRST USE 3–18–1997; IN COMMERCE
3–18–1997.

SN 75–203,833, FILED 11–25–1996.

RUDY R. SINGLETON, EXAMINING ATTOR-
NEY

EXHIBIT A - 17

Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

**United States Patent and Trademark Office**

Reg. No. 2,096,010
Registered Sep. 9, 1997

## SERVICE MARK
### PRINCIPAL REGISTER

# PHISH

PHISH, INC. (DELAWARE CORPORATION)
C/O DIONYSIAN PRODUCTIONS
431 PINE ST. - SUITE I
BURLINGTON, UT 05401

FOR: PROVIDING A DATA BASE OF IN-
FORMATION AND INTERACTIVE DISCUS-
SION GROUPS ON A GLOBAL COMPUTER
NETWORK IN THE FIELDS OF MUSIC AND

ENTERTAINMENT , IN CLASS 41 (U.S. CLS.
100, 101 AND 107).

FIRST USE 7–31–1996; IN COMMERCE
7–31–1996.

SN 75–076,161, FILED 3–21–1996.

MARY ROSSMAN, EXAMINING ATTORNEY

EXHIBIT A - 18

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

Reg. No. 2,029,049

## United States Patent and Trademark Office

Registered Jan. 7, 1997

### TRADEMARK
### PRINCIPAL REGISTER

## PHISH

PHISH, INC. (DELAWARE CORPORATION)
C/O DIONYSIAN PRODUCTIONS
431 PINE ST. - SUITE 1
BURLINGTON, VT 05401

   FOR: MUSICAL AUDIO AND VIDEO RE-
CORDINGS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36
AND 38).

FIRST   USE   10-0-1984;   IN   COMMERCE
0-0-1987.

SER. NO. 75-086,498, FILED 4-10-1996.

MARY ROSSMAN, EXAMINING ATTORNEY

EXHIBIT A - 19

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38 and 50

Reg. No. 2,029,048

## United States Patent and Trademark Office

Registered Jan. 7, 1997

### TRADEMARK
#### PRINCIPAL REGISTER

## PHISH

PHISH, INC. (DELAWARE CORPORATION)
C/O DIONYSIAN PRODUCTIONS
431 PINE ST. SUITE 1
BURLINGTON, VT 05401

FOR: POSTERS, DECALS, CALENDARS, SHEET MUSIC, NEWSLETTERS AND BOOKS IN THE FIELDS OF MUSIC AND ENTERTAIN-

MENT, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 10-0-1984; IN COMMERCE 1-2-1986.

SER. NO. 75-085,659, FILED 4-9-1996.

MARY ROSSMAN, EXAMINING ATTORNEY

EXHIBIT A - 20

Int. Cls.: 16, 25 and 26

Prior U.S. Cls.: 37, 38, 39, 40, 42 and 50

**United States Patent and Trademark Office**

Reg. No. 1,917,861
Registered Sep. 12, 1995

## TRADEMARK
### PRINCIPAL REGISTER

## PHISH

PHISH, INC. (DELAWARE CORPORATION)
C/O JOHN PALUSKA
DIONYSIAN PRODUCTIONS1632 MASSACHU-
  SETTS AVENUE
LEXINGTON, MA 02173

  FOR: BUMPER STICKERS, IN CLASS 16 (U.S.
CL. 38).
  FIRST  USE  3–0–1984;  IN  COMMERCE
3–0–1984.
  FOR: HATS, T-SHIRTS, SHIRTS, AND JACK-
ETS, IN CLASS 25 (U.S. CL. 39).
  FIRST  USE  3–0–1984;  IN  COMMERCE
3–0–1984.

  FOR: CLOTH PATCHES FOR CLOTHING, IN
CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).
  FIRST  USE  3–0–1984;  IN  COMMERCE
3–0–1984.
  OWNER OF U.S. REG. NO. 1,782,981.
  THE MARK CONSISTS OF A FISH DESIGN
CONTAINING  THE  TERM  "PHISH"  STYL-
IZED.

  SER. NO. 74–414,580, FILED 7–16–1993.

CHERYL LYNN BLACK, EXAMINING ATTOR-
NEY

EXHIBIT A - 21

Int. Cl.: 41

Prior U.S. Cl.: 107

## United States Patent and Trademark Office

Reg. No. 1,782,981
Registered July 20, 1993

## SERVICE MARK
### PRINCIPAL REGISTER

## PHISH

PHISH, INC. (DELAWARE CORPORATION)
168 WEAVER STREET
WINOOSKI, VT 05404

  FOR: ENTERTAINMENT IN THE NATURE
OF A MUSICAL GROUP, IN CLASS 41 (U.S. CL.
107).

FIRST USE 11-1-1983; IN COMMERCE
10-1-1985.

  SER. NO. 74-265,851, FILED 4-14-1992.

HOPE SLONIM, EXAMINING ATTORNEY

Int. Cls.: 16, 25 and 26

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, 39, 40, 42 and 50

## United States Patent and Trademark Office

Reg. No. 1,930,480
Registered Oct. 31, 1995

### TRADEMARK
#### PRINCIPAL REGISTER



PHISH, INC. (DELAWARE CORPORATION)
C/O JOHN PALUSKA
DIONYSIAN PRODUCTIONS1632 MASSACHU-
SETTS AVENUE
LEXINGTON, MA 02173

FOR: BUMPER STICKERS, IN CLASS 16 (U.S.
CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).
FIRST USE 3–0–1984; IN COMMERCE
3–0–1984.
FOR: HATS, T-SHIRTS, SHIRTS, AND JACK-
ETS, IN CLASS 25 (U.S. CLS. 22 AND 39).
FIRST USE 3–0–1984; IN COMMERCE
3–0–1984.

FOR: CLOTH PATCHES FOR CLOTHING, IN
CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).
FIRST USE 3–0–1984; IN COMMERCE
3–0–1984.
OWNER OF U.S. REG. NO. 1,782,981.
THE MARK CONSISTS OF A FISH DESIGN
CONTAINING THE TERM "PHISH" STYL-
IZED.

SER. NO. 74–414,200, FILED 7–16–1993.

CHERYL LYNN BLACK, EXAMINING ATTOR-
NEY

# EXHIBIT B

Int. Cls.: **9, 25 and 41**

Prior U.S. Cls.: **21, 22, 23, 26, 36, 38, 39, 100, 101 and 107**

**Reg. No. 2,662,635**

## United States Patent and Trademark Office

Registered Dec. 17, 2002

**TRADEMARK
SERVICE MARK
PRINCIPAL REGISTER**

## OYSTERHEAD

OYSTERHEAD (CALIFORNIA GENERAL PART-
NERSHIP)
C/O MYMAN, ABELL, FINEMAN, GREENSPAN &
LIGHT, ATTN: ERIC R. GREENSPAN, ESQ.
11777 SAN VINCENTE BLVD., SUITE 880
LOS ANGELES, CA 90049

FOR: PRERECORDED MUSICAL RECORDINGS,
IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-2-2001; IN COMMERCE 10-2-2001.

FOR: JACKETS, HATS, SHIRTS AND T-SHIRTS,
IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5-4-2000; IN COMMERCE 5-4-2000.

FOR: ENTERTAINMENT IN THE NATURE OF A
MUSICAL GROUP, IN CLASS 41 (U.S. CLS. 100, 101
AND 107).

FIRST USE 5-4-2000; IN COMMERCE 5-4-2000.

SER. NO. 76-337,974, FILED 11-15-2001.

LESLEY LAMOTHE, EXAMINING ATTORNEY

**EXHIBIT B - 24**

# EXHIBIT C

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,048,310

Registered Mar. 25, 1997

## TRADEMARK
### PRINCIPAL REGISTER

## GAMEHENDGE

ANASTASIO, TREY (UNITED STATES CITI-
ZEN)
C/O DIONYSIAN PRODUCTIONS
1632 MASSACHUSETTS AVE.
LEXINGTON, MA 02173

FOR: CLOTHING, NAMELY, HATS, T-
SHIRTS, SHIRTS, JACKETS, PANTS, SOCKS,
SHORTS AND PONCHOS, IN CLASS 25 (U.S.
CLS. 22 AND 39).
FIRST USE 7–22–1996; IN COMMERCE
7–22–1996.

SN 74–718,227, FILED 8–21–1995.

CARYN HINES, EXAMINING ATTORNEY

EXHIBIT C - 25

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, and 50

Reg. No. 2,053,513

### United States Patent and Trademark Office

Registered Apr. 15, 1997

TRADEMARK
PRINCIPAL REGISTER

## GAMEHENDGE

ANASTASIO, TREY (UNITED STATES CITI-
ZEN)
C/O DIONYSIAN PRODUCTIONS
1632 MASSACHUSETTS AVE.
LEXINGTON, MA 02173

FOR: BUMPER STICKERS, POSTERS,
DECALS, CALENDARS, SHEET MUSIC, NEWS-
LETTERS AND BOOKS IN THE FIELDS OF

MUSIC AND ENTERTAINMENT, IN CLASS 16
(U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 7-22-1996; IN COMMERCE
7-22-1996.

SN 74-717,954, FILED 8-21-1995.

CARYN HINES, EXAMINING ATTORNEY

EXHIBIT C - 26

# EXHIBIT D

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,247,438

**United States Patent and Trademark Office**   Registered May 25, 1999

## SERVICE MARK
### PRINCIPAL REGISTER

## WATERWHEEL

WATERWHEEL FOUNDATION, INC., THE (VERMONT CORPORATION)
431 PINE STREET, SUITE 1
BURLINGTON, VT 05401

FOR: CHARITABLE FUND RAISING AND DISTRIBUTION OF FUNDS TO CHARITIES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 4–22–1997; IN COMMERCE 4–22–1997.

SER. NO. 75–410,790, FILED 12–24–1997.

CRAIG D. TAYLOR, EXAMINING ATTORNEY

EXHIBIT D - 27